**FARRELL FRITZ, P.C.**
Martin G. Bunin
622 Third Avenue, Suite 37200
New York, NY  10017
Telephone: (212) 687-1230

*Counsel for Eric Huebscher, not individually*
*but solely in his capacity as Receiver*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| JEFFREY SOLOMON SIMPSON, | Case No. 26-10359 (lgb) |
| Debtor. | |

------------------------------------------------------------X

| | |
|---|---|
| ERIC M. HUEBSCHER, as Receiver, | |
| Plaintiff, | |
| - against - | Adversary Proc. No. |
| JEFFREY SOLOMON SIMPSON, | |
| Defendant. | |

------------------------------------------------------------X

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiff Eric M. Huebscher, not individually but solely in his capacity as court-appointed receiver (the "Receiver" or "Plaintiff"), by his attorneys, Farrell Fritz, P.C., files this complaint against defendant and debtor Jeffrey Solomon Simpson (the "Debtor") to determine the non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6) and Rule 4007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and alleges as follows:

### JURISDICTION AND VENUE

1.  The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334.

1

2.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

4.    The Plaintiff is the temporary receiver appointed in the action entitled *Jeffrey Simpson, et al. v. Jared* Chassen*, et al.*, Index No. 158055/2023 (Supreme Court, County of New York: Commercial Division) (the "State Court Action").  Plaintiff brings this action solely in his capacity as Receiver.

5.    The Debtor is an individual residing in the County of New York, State of New York.

**STATEMENT OF FACTS**

6.    By order dated March 11, 2025 (the "Receiver Order") (NYSCEF Doc. No. 1360) in the State Court Action,[1] the Plaintiff was appointed Receiver over (1) the managerial and membership interests of JJ Arch LLC in the JJ Arch Controlled Entities, a term defined in the Receiver Order to include 1640 Montauk LLC ("1640 Montauk"), 1640 Motors LLC d/b/a Rêver Motors ("Rêver Motors") and 146 E 89 Borrowers 1, 2 and 3 LLC, JJ NY 550 LLC and 225 HPR LLC, (2) the JJ Arch Controlled Properties, a term defined in the Receiver Order to include the business of Rêver Motors and the property on which it conducts business located at 1640 Montauk Highway, Water Mill, New York (the "Rêver Motors Premises" or the "1640 Montauk Property"), the townhouse located at 146 East 89th Street, New York, New York, the retail condo unit located at 550 Metropolitan Avenue, Brooklyn, New York and the residential property located at 225 Head of Pond Road, Water Mill, New York ("225 HPR") and (3) JJ Arch's bank accounts, records and

---

[1] "NYSCEF" refers to the New York State Courts Electronic Filing system, and citations to NYSCEF refer to specific filings in the State Court Action or the other actions referenced herein, as the context dictates. Due to the voluminous filings in the State Court Action, in lieu of being physically attached as exhibits, most of the documents are cited to the NYSCEF record with hyperlinks.

funds, and the JJ Arch Controlled Entities' funds, assets, properties and bank accounts (Receiver Order, p. 2).

7. The Receiver Order granted the Receiver "complete and sole managerial authority" over the JJ Arch Controlled Entities and JJ Arch Controlled Properties (Receiver Order [NYSCEF Doc. No. 1360], p.3). It authorizes the Receiver to, among other things, manage, rent, lease, sell or develop the JJ Arch Controlled Properties and to take such other steps to dispose of the receivership assets as he deems necessary to maximize the value of the JJ Arch Controlled Entities and JJ Arch Controlled Properties (*Id.*, pp. 3-4).

8. The Receiver Order further provides that:

> JJ Arch and Simpson (and Chassen, to the extent he possesses any of the following articles), shall immediately provide the Receiver with (1) all books and records and books of account of JJ Arch and the JJ Arch Controlled Entities, (2) an inventory of all assets belonging to the JJ Arch Controlled Entities, including a list of vehicles at, or that were at, Rêver Motors, since August 16, 2023 whether titled in Simpson's name, the name of any entity controlled by Simpson, or the name of a JJ Arch Controlled Entity; (3) a list of all employees at the JJ Arch Controlled Entities or JJ Arch Controlled Properties since August 16, 2023, any payroll records for such employees, and any evidence that payroll taxes were paid for such employee(s); (4) copies of all filed tax returns for JJ Arch and the JJ Arch Controlled Entities to the extent such exist, and all tax correspondence from or to the Internal Revenue Service or any other governmental entity; (5) all banking records for JJ Arch and the JJ Arch Controlled Entities; (6) all books, logs, spreadsheets, and other documents detailing the transactions at the JJ Arch Controlled Entities and funds and assets belonging to the JJ Arch Controlled Entities; (7) keys to, or any other items, codes, or similar required to access, JJ Arch Properties, and (8) any other documents requested by the Receiver and necessary or helpful for the Receiver to fulfil his or her duties under this Order.

(Receiver Order, p. 5).

9. The Receiver Order (p. 6) barred the Debtor and Chassen from communicating with the Receiver except through counsel unless requested by the Receiver, and if either did not have

counsel, to communicate only via e-mail in writing during business hours, and to cease if requested by the Receiver.

10.     On May 12, 2025, the court presiding over the State Court Action (the "State Court") issued an order compelling Simpson to comply with the Receiver Order (the "Enforcement Order") (NYSCEF No. 1637 [originally filed to NYSCEF No. 1508], p. 2).  The Enforcement Order, among other things, barred the Debtor from entering any of the properties under receivership, from transacting any business of any of the entities under receivership, from harassing the Receiver, and from interfering with the Receiver's exercise of his duties (*Id.*, p. 2).

11.  The Enforcement Order also compelled the Debtor to provide thirteen categories of documents to the Receiver, similar to the documents the Debtor was required to provide under the Receiver Order. The Enforcement Order additionally required the Debtor to furnish to the Receiver (1) the original certificates of title for each vehicle owned by any JJ Arch Controlled Entities, (2) all appraisals, broker opinions, or other valuations of the assets under receivership, (3) all loan documents in which any JJ Arch Controlled Entity was a party or that related to the JJ Arch Properties, (4) the location of all assets belonging to the JJ Arch Controlled Entities and (6) all other documents requested by the Receiver to exercise his duties (*Id.*, pp. 3-5).

12.  The Debtor willfully and without just cause or excuse disobeyed the Receiver Order and the Enforcement Order by (a) expelling the Receiver from the Rêver Motors Premises in late March 2025, (b) interfering with the Receiver's control of 225 HPR, (c) refusing to provide the Receiver with documents and information required by the Receiver Order and Enforcement Order, (d) continuing to conduct business at Rêver Motors after the entry of the Receiver Order through on or about May 13, 2025,  and continuing to operate Rêver Motors during this period, (e) after the Receiver first obtained access to the Rêver Motors Premises on or about May 14, 2025, re-

seizing control of the Rêver Motors Premises from May 23, 2025 until the end of June 2026 and continuing to operate Rêver Motors during this period and (f) changing the locks at Rêver Motors when he re-seized control.

13.    The Debtor willfully and without just cause or excuse disobeyed the Receiver Order and the Enforcement Order by interfering with the Receiver's possession, control and marketing for sale of 225 HPR by (a) twice changing the locks on the house located at 225 HPR, (b) removing signage at 225 HPR placed there by the Receiver's real estate broker for the property and (c) destroying, in the presence of a police officer, the alarm system installed by the Receiver at 225 HPR.

14.    The Debtor willfully and without just cause or excuse disobeyed the Receiver Order and the Enforcement Order by refusing to provide the Receiver with information and documents required to be furnished to the Receiver, including but not limited to (a) the Rêver Motors payroll records, (b) a complete listing of the vehicles located at Rêver Motors since August 23, 2023 and vehicles missing from Rêver Motors for which the Receiver found certificates of title at Rêver Motors, (c) tax information for the JJ Arch Controlled Entities, (d) original certificates of title for vehicles owned by any of the JJ Arch Controlled Entities, including Rêver Motors, and (d) banking records for the JJ Arch Controlled Entities.

15.    The Debtor willfully and without just cause or excuse violated Receiver Order (i) by making a threatening phone call to the Receiver, (ii) sending the Receiver a threatening text message and (iii) continuously sending abusive and threatening communications to the Receiver, Chassen, other parties and counsel for the parties, as well as to the State Court itself.

16.    On May 30, 2025, Chassen moved in the State Court Action to hold Simpson in civil and criminal contempt for his repeated willful disobedience of the Receiver Order and the

Enforcement Order (the "Contempt Motion") (NYSCEF Doc. Nos. 1537 – 1548).  The motion avers, among other things, that the Debtor, for 56 days from March 11, 2025 through May 13, 2025, and again for 46 days from May 24, 2025 through the end of June 2025, prevented the Receiver from performing his duties by, among other things, (a) refusing to permit him access to receivership properties, (b) expelling him from the Business Premises, (c) changing the locks at 225 HPR twice and, in the presence of a police officer, destroying the alarm system the Receiver installed there and (d) sending and making abusive and threatening communications to the Receiver.

17.   The Contempt Motion seeks the recovery of the actual damages, fines, costs, expenses, attorney's fees and other professional fees incurred by Chassen, the Receiver and JJ Arch and the JJ Arch Controlled Entities as a result of the Debtor's civil contempt.

18.   The Debtor's willful disobedience of the State Court's orders interfered with every aspect of the receivership, required the Receiver to expend substantial time and resources to address the Debtor's willful non-compliance, including substantial costs, expenses, attorney's fees and other professional fees, and caused actual damages to the Receiver.

19.   Because the Debtor's repeated and continuing willful disobedience of the Receiver Order and Enforcement Order prevented the Receiver from performing his duties, the Receiver joined the Contempt Motion (NYSCEF Doc. No. 1549-1551).

20.   The State Court conducted an evidentiary hearing on the Contempt Motion over four days between late July 2025 and mid-October 2025. The State Court has not yet rendered its decision on the Contempt Motion.

6

## COUNT I
### Non-dischargeability Under 11 U.S.C. § 523(a)(6)

21. Plaintiff repeats and realleges the allegations in paragraphs "1" to "20" above as if set forth fully herein.

22. As detailed in the Contempt Motion, the Debtor willfully disobeyed the Receiver Order and Enforcement Order on numerous occasions.

23. The Debtor's disobedience of the Receiver Order and the Enforcement Order as detailed in the Contempt Motion was without just cause or excuse.

24. The Debtor's disobedience of the Receiver Order and the Enforcement Order was both willful and malicious.

25. The Debtor's willful and malicious conduct caused injury to the Receiver by substantially increasing the costs and expenses of the receivership incurred by the Receiver and his counsel.

26. The actual damages, fines, costs, expenses, attorney's fees and other professional fees incurred by the Receiver as a result of the Debtor's civil contempt and sought to be recovered in the Contempt Motion, are claims of the Receiver against the Debtor under 11 U.S.C. § 101(5) and debts owed by the Debtor under 11 U.S.C. § 101(12).

27. To the extent the State Court grants the Contempt Motion and awards actual damages, fines, costs, expenses, attorney's fees and/or other professional fees against the Debtor and to the Receiver, the Debtor's liability on those claims is a debt owed to the Receiver caused by Debtor's willful and malicious injury and is excepted from discharge under 11 U.S.C. § 523(a)(6).

WHEREFORE, the Receiver respectfully requests that the Court enter judgment against the Debtor as follows:

(a) Declaring that the entire amount of the Receiver's actual damages, fines, costs, expenses, attorney's fees and other professional fees that may be awarded by the State Court against the Debtor on the Contempt Motion, plus interest thereon, is not dischargeable under 11 U.S.C. § 523(a)(6);

(b) Granting a non-dischargeable judgment in favor of the Receiver against the Debtor in the entire amount of the Receiver's actual damages, fines, costs, expenses, attorney's fees and other professional fees awarded by the State Court against the Debtor on the Contempt Motion, plus interest, reasonable attorney's fees, costs and expenses; and

(c) Granting the Receiver such other and further relief to which he may be entitled.

Dated: May 26, 2026
New York, New York

**FARRELL FRITZ, P.C.**

By:  /s/ *Martin G. Bunin*
        Martin G. Bunin
        622 Third Avenue, Suite 37200
        New York, New York 10017
        Telephone: (212) 687-1230
        Email: mbunin@farrellfritz.com

*Counsel for Eric M. Huebscher, not individually but solely in his capacity as Receiver*

0784790.2